UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

FREDERICK DECKER,

                Plaintiff,

    V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

**REPORT AND RECOMMENDATION**

09-CV-908
(FJS/VEB)

## I. INTRODUCTION

In February of 2005, Plaintiff Frederick Decker applied for disability insurance benefits ("DIB") under the Social Security Act. The Commissioner of Social Security awarded Plaintiff DIB for a closed period of disability, but denied the balance of Plaintiff's application, finding that Plaintiff experienced medical improvement as of October 15, 2004, and was thus not disabled after that date.

Plaintiff, by and through his attorney, Anthony B. Lamb, Esq., commenced this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 16).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for DIB on February 18, 2005, alleging disability beginning on March 27, 2003. (T at 96-101).[1] The application was denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On January 27, 2007, Plaintiff appeared, with counsel, and testified at a hearing held before ALJ Terence Farrell. (T at 545-78). Testimony was also received from Salvatore Garozzo, a vocational expert. (T at 578-92). A supplemental hearing was held on February 19, 2008, with testimony being received from Dr. Justin Willer, a medical expert. (T at 597-627).

On March 26, 2008, ALJ Farrell issued a written decision granting benefits for a closed period of disability (March 27, 2003 - October 14, 2004), but finding that Plaintiff's disability ended due to medical improvement effective October 15, 2004. (T at 31-43). The ALJ's decision became the Commissioner's final decision on June 5, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 18-21).

Plaintiff, through counsel, timely commenced this action on August 7, 2009. (Docket No. 1). The Commissioner interposed an Answer on December 21, 2009. (Docket No. 8). Plaintiff filed a supporting Brief on February 22, 2010, (Docket No. 12). The Commissioner filed a Brief in opposition on May 3, 2010. (Docket No. 15).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had

---

[1]Citations to "T" refer to the Administrative Transcript. (Docket No. 7).

accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be granted, Plaintiff's motion be denied, and this case be dismissed.

### III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford

---

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

    **1.    Commissioner's Decision**

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act as of March 27, 2003, the date he became disabled as the result of a motor vehicle accident. The ALJ further determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. The ALJ concluded that Plaintiff had the following combination of impairments, which the ALJ considered "severe" as defined under the Act: degenerative disc disease, obesity, and status post C3-C4 anterior discectomy and fusion. (T at 34).

However, the ALJ determined that Plaintiff did not have an impairment or

---

the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 35).

The ALJ concluded that, between March 27, 2003, and October 14, 2004, Plaintiff retained the residual functional capacity to perform less than the full range of sedentary work, as defined in 20 C.F.R. § 416.967 (b), due to "significant exertional limitations". (T at 35). He further found that Plaintiff could not perform his past relevant work during this closed period. (T at 36). Considering Plaintiff's age (35 years old), education (at least high school), and residual functional capacity (less than the full range of sedentary work), the ALJ concluded there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform during the closed period of disability between March 27, 2003, and October 14, 2004. (T at 36).

Accordingly, the ALJ concluded that Plaintiff had been under a disability between March 27, 2003, the alleged onset date, and October 14, 2004. (T at 37). However, the ALJ found that Plaintiff experienced medical improvement as of October 15, 2004, and that Plaintiff's disability ended on that date. The ALJ concluded that since that date, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in the Listings. (T at 38).

The ALJ further found that as of October 15, 2004, Plaintiff retained the residual functional capacity to perform a wide range of light work. (T at 38). The ALJ found that Plaintiff's medical improvement was related to the ability to work. (T at 42). Specifically, the ALJ concluded that, after experiencing medical improvement, Plaintiff could occasionally lift/carry/push/pull 20 pounds, frequently lift/carry/push/pull 10 pounds, stand or walk for about 6 hours in an 8-hour workday (with standing limited to approximately 30

minutes at a time), walk short distances of a block or so several times per day, sit for about 6 hours in an 8-hour workday (with sitting limited to 30 minutes at a time, at which point Plaintiff would need to stand or walk for a few minutes), occasionally rotate his neck, and occasionally balance/climb, crawl/crouch/stoop/kneel (but never reach overhead). (T at 38).

Although Plaintiff remained unable to return to his past relevant work as a furniture repairer/assembler, construction worker, pest control worker, and/or taxi driver, the ALJ concluded that Plaintiff was able to perform a significant number of jobs in the national economy. (T at 42). Accordingly, the ALJ found that Plaintiff was not entitled to any benefits after October 15, 2004. (T at 43). As noted above, the ALJ's decision became the Commissioner's final decision on June 5, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 18-21).

### 2. Plaintiff's Arguments

As noted above, the ALJ found that Plaintiff experienced medical improvement as of October 15, 2004, and that Plaintiff's disability ended on that date. (T at 38). Plaintiff challenges this finding and argues that his condition remained disabling. Principally, Plaintiff contests the ALJ's review of the medical evidence and his assessment of Plaintiff's credibility. This Court will address both arguments in turn.

The medical improvement standard is encompassed in specific steps set forth in 20 C.F.R. § 404.1594 and § 416.994. These steps are completed "[t]o assure that disability reviews are carried out in a uniform manner ... and that any decisions to stop disability benefits are made objectively, neutrally and are fully documented." 20 C.F.R. §§ 404.1594(f), 416.994(b)(5). This analysis asks the following questions:

> (1) Are you engaging in substantial gainful activity? If you are

> ... we will find disability to have ended ....
>
> (2) If you are not, do you have an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of this subpart? If you do, your disability will be found to continue.
>
> (3) If you do not, has there been medical improvement as defined in paragraph (b)(1) of this section? ....
>
> (4) If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance with paragraphs (b)(1) through (4) of this section....
>
> (5) If we found at step (3) that there has been no medical improvement or if we found at step (4) that the medical improvement is not related to your ability to work, we consider whether any of the exceptions in paragraphs (d) and (e) of this section apply....
>
> (6) If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe ....
>
> (7) If your impairment(s) is severe, ... we will assess your residual functional capacity based on all your current impairments and consider whether you can still do work you have done in the past. If you can do such work, disability will be found to have ended.
>
> (8) If you are not able to do work you have done in the past, we will consider one final step. Given the residual functional capacity assessment and considering your age, education and past work experience, can you do other work? If you can, disability will be found to have ended. If you cannot, disability will be found to continue.

20 C.F.R. § 404.1594(f)(1)-(8). The term "medical improvement" is defined as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 416.994(b)(1)(I).

### a. Medical Evidence

Plaintiff contends that the ALJ's conclusion that he experienced medical improvement as of October 15, 2004, was not supported by substantial evidence. For the following reasons, this Court finds Plaintiff's argument unavailing. The record contained ample evidence to support the ALJ's conclusion that Plaintiff experienced a decrease in the medical severity of his impairment sufficient to allow him to perform light work. (T at 38).

On October 15, 2004, Dr. Thierry Bonnabesse, one of Plaintiff's treating physicians, completed an initial pain management consultation report, in which he reported that Plaintiff was "ambulating without difficulty" and had normal strength in the upper and lower extremity major muscle groups. (T at 270). In a letter dated that same day, Dr. Bonnabesse indicated that Plaintiff could not return to work involving frequent lifting, especially heavy lifting. (T at 378). However, Dr. Bonnabesse opined that Plaintiff could "perform in an environment in which he does not have to do frequent lifting of anything between 25 and 50 lbs, and does not do any lifting of anything over 50 lbs." (T at 378).

In addition, Dr. Bonnabesse assessed that Plaintiff should not engage in activities requiring repetitive neck rotation (e.g. driving). (T at 378). A November 2004 note from Karen Petronis, a nurse practitioner, indicated that Plaintiff should avoid "heavy lifting, overhead activities and repetitive movements with his neck" and opined that Plaintiff would "most likely" return to work "within the next 3 months." (T at 340).

In December of 2004, Dr. Bonnabesse diagnosed cervical radiculopathy and administered corticosteroid injections. (T at 268). Plaintiff was observed standing and walking without difficulty following the treatment. (T at 268). In January of 2005, Dr. Bonnabesse again noted normal strength in the upper and lower extremity major muscle

groups, with "no atrophy or involuntary muscle contraction noted." (T at 266-67).

Dr. Sateesh Goswami conducted a consultative examiner in May of 2005. Dr. Goswami described Plaintiff's self-reported symptoms, but also found no muscular atrophy, normal gait and station, and normal motor and sensory examination. (T at 277).

A lumbar spine MRI taken in May of 2005 showed "mild degenerative disc disease" at L4/5 and L5/S1. (T at 278). A cervical spine MRI from July 2005 indicated no evident impingement of the cervical cord" and "mild degenerative disc disease." (T at 300). A cervical spine x-ray taken in October 2005, following Plaintiff's spinal fusion surgery, also showed only mild degenerative change. (T at 329).

Dr. Darryl DiRiso, a neurosurgeon, examined Plaintiff in August of 2005. He noted "significant cervical disk degeneration and neck pain," but found that Plaintiff ambulated "quite well" and moved his upper and lower extremities "with excellent strength." (T at 338). Following surgery, Dr. DiRiso noted that Plaintiff was moving "all four extremities with excellent strength" and was "truly feel[ing] . . . better." (T at 330). On August 4, 2006, Dr. DiRiso made the following note: "My impression is that [Plaintiff] has neck pain, but I told him . . . it is tough to [keep] him out of work with just neck pain." (T at 320). Dr. DiRiso recommended continued treatment with Tylenol and would not grant Plaintiff's request for prescription medication. (T at 320).

Dr. Junnong Tang treated Plaintiff in late 2006 and early 2007. In June of 2007, he completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical), in which he opined that Plaintiff could occasionally lift/carry 15-20 pounds, frequently lift/carry less than 10 pounds; stand/walk for less than 2 hours in an 8-hour workday, sit for less than 6 hours in an 8-hour workday; and could never climb, balance, kneel, crouch,

10


crawl, or stoop. (T at 424-25). The ALJ reasonably discounted this assessment on the grounds that Dr. Tang only examined Plaintiff twice and because Dr. Tang's conclusions were unsupported by any clinical or laboratory findings. (T at 40). Indeed, Dr. Tang noted that he did "not have a good explanation" as to why Plaintiff was experiencing pain. (T at 429). Upon examination, Dr. Tang observed no muscle atrophy and the shoulder range of motion was "within functional range." (T at 431).

In January of 2008, Dr. Anjum Igbal, another treating provider, opined that Plaintiff was moderately limited with regard to walking and standing; and very limited with respect to sitting, lifting/carrying, pushing/pulling/pending. (T at 506). Dr. Igbal assessed that Plaintiff was unable to perform any lifting, pushing, pulling, bending, or sitting for long periods. (T at 507). The ALJ also reasonably discounted this assessment, referencing the other evidence of record (including the largely benign clinical findings and the assessments of Dr. Bonnabesse and Dr. DiRiso). In addition, Dr. Igbal's assessment was contradicted by his own clinical notes. For example, in July of 2007, Dr. Igbal described Plaintiff as having "some discomfort" and "mild muscle tightness." (T at 490). In September of 2007, Dr. Igbal reported that Plaintiff was "doing well . . . ." (T at 488).

Additional support for the ALJ's assessment that Plaintiff experienced medical improvement effective October 15, 2004, is found in the report of Dr. Nader Wassef, a consultative examiner. Although the ALJ did not agree with Dr. Wassef's conclusion that Plaintiff should never crouch or crawl due to neck pain (T at 40, 441), the consultative examiner's opinion was otherwise consistent with the ALJ's determination. Dr. Wassef was "not able to detect evidence of physical limitations in both hands, upper extremities, thoracic and lumbar spine, [or] both lower extremities." (T at 436). Dr. Wassef found

"moderate limitation" with regard to movements of the cervical spine "in relationship to flexion, extension, rotation[,] as well as lateral flexion." (T at 436). He further opined that Plaintiff could frequently lift/carry up to 10 pounds and occasionally lift/carry up to 20 pounds; and sit/stand/walk for 8 hours in an 8-hour workday. (T at 438-39).

The testimony provided by medical expert Dr. Justin Willer also supported the ALJ's assessment. Dr. Willer reviewed Plaintiff's medical records prior to his testimony and concluded that the record did not establish any impairments. (T at 598-99). Dr. Willer also opined that the record did not indicate any functional limitations. (T at 604). Dr. Willer indicated that his review of the evidence suggested that Plaintiff's pain might be psychologically (as opposed to neurologically) based. (T at 619-623).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Such reliance is particularly appropriate where, as here, the opinions of these examining and non-examining State agency medical consultants are supported by the weight of the evidence. See Brunson v. Barnhart, 01-CV-1829, 2002 WL 393078, at *14 (E.D.N.Y. Mar. 14, 2002) (holding that opinions of non-examining sources may be considered where they are supported by evidence in the record).

In light of the foregoing, this Court finds that the ALJ's conclusion that Plaintiff experienced medical improvement as of October 15, 2004, was supported by substantial evidence, including clinical findings and tests, as well as assessments provided by treating physicians, a consultative examiner, and a non-examining medical expert.

### b. Credibility

Courts in the Second Circuit have determined pain is an important element in disability claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an

>underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
>Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified that he experiences muscle spasms and is unable to sit or stand for any duration. (T at 558). His back bothers him constantly. (T at 559).

14

Plaintiff also experiences periodic leg and hip pain. (T at 560-61). He testified that he is only able to stand for 15 minutes at a time and could walk about 3 city blocks.(T at 567). Plaintiff stated that he has difficulty dressing and that his girlfriend attends to most of the household duties. (T at 568-69).

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible beginning on October 15, 2004. (T at 41). The ALJ's conclusion was supported by substantial evidence. Plaintiff's testimony was inconsistent with much of the evidence of record, including (as discussed above) clinical findings and tests, as well as assessments provided by treating physicians, a consultative examiner, and a non-examining medical expert. Further, Plaintiff's testimony was contradicted by contemporaneous notes concerning his symptoms. For example, he told Dr. Goswami that he was able to take "care of himself and his house" and could "walk one to three miles a day." (T at 276). In December of 2007, Plaintiff described his pain level as "not bad" and a 2 on a scale of 1-10. (T at 502).

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec'y, Dep't of Health & Human Servs, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's

demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing Pascariello v. Heckler, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir.1999).

The Court finds that the ALJ properly exercised his discretion to evaluate the credibility of Plaintiff's testimony and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence. See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir.1984). The ALJ's decision should therefore be upheld.

There is no question that Plaintiff lives with pain, as the record documents frequent complaints in that regard and various pain treatment procedures. However, "disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment. Otherwise, eligibility for disability benefits would take on new meaning." Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983). Moreover, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence [of disability]." 42 U.S.C. § 423(d)(5)(A).

## IV. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. It is clear that the ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including the assessments of

Plaintiff's treating provider, the consultative examiner, and the non-examining consultants, and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. This Court finds no reversible error and because substantial evidence supports the Commissioner's decision, this Court recommends that the Commissioner be GRANTED judgment on the pleadings and that Plaintiff's motion for judgment on the pleadings be DENIED.

                                  Respectfully submitted,

                                  Victor E. Bianchini
                                  United States Magistrate Judge

Dated:   November 28, 2011
          Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS** to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.
November 28, 2011

Victor E. Bianchini
United States Magistrate Judge